IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) Criminal No. 5:15-cr-00021 |
| v. | ) |
| | ) By: Elizabeth K. Dillon |
| LESLIE ANDREW WARE | ) United States District Judge |

**MEMORANDUM OPINION AND ORDER**

Defendant Leslie Andrew Ware, proceeding *pro se*, filed a motion for compassionate release due to COVID-19.  (Dkt. No. 56.)  In accordance with local Standing Order 2019-1, the court appointed the Federal Public Defender (FPD) and ordered the FPD to file a supplement to Steele's motion.  (Dkt. Nos. 57, 58.)  The FPD filed a supplement to Ware's motion on September 21, 2020, (Dkt. No. 61), which the government has opposed (Dkt. No. 65).  Ware, by counsel, filed a reply to the government's opposition.  (Dkt. No. 108.)  The court finds that no hearing on the motion is necessary and, for the reasons stated below, will deny Ware's motion.

I.  BACKGROUND

On February 24, 2015, Ware sold heroin to someone (initials W.B.) who was procuring heroin for a friend, J.G.  W.B. and J.G. both used the heroin purchased from Ware.  J.G. overdosed and died from "acute heroin poisoning."  (Agreed Stmt. of Facts, Dkt. No. 36.)  On the same night, Ware also sold heroin to a confidential informant (CI) in a controlled purchase.  Following the controlled purchase, law enforcement conducted a traffic stop and found a revolver and ten bags of heroin in Ware's car.  (*Id.*)

On July 21, 2015, Ware was charged with distribution of heroin resulting in death and possession with intent to distribute heroin.  (Dkt. No. 1.)  Ware pleaded guilty on January 27, 2015, to the lesser included charge of heroin distribution.  (Dkt. No. 31.)  Ware had prior

convictions for assault and battery, identity fraud, DWI, and driving without a license. According to the Presentence Investigation Report, Ware's guideline range was calculated at 235 to 240 months.  Pursuant to a Rule 11(c)(1)(C) plea agreement, accepted by the court, the binding sentencing range was 120 to 240 months.  (Dkt. No. 34.)

On May 2, 2016, the court sentenced Ware to 156 months of incarceration, followed by three years of supervised release.  (Dkt. No. 48.)  BOP records indicate Ware is scheduled to be released on May 14, 2027.  (Dkt. No. 61-3.)  Ware is classified as a low risk of recidivism, and his security classification is low.  (*Id.*)  He is being housed at FCI-Terminal Island.  (*Id.*)

Ware has been diagnosed with gout and is overweight, with a body mass index of 29. (Dkt. No. 61-2.)  Ware tested positive for COVID-19 but has now recovered.  (Dkt. No. 61-3.) More than 504 inmates (out of 755 tested), including Ware, have tested positive for COVID-19 at Terminal Island, ten of whom have died.  As of January 25, 2021, however, there are no known COVID-19 positive inmates at FCI-Terminal Island.[1]

## II.  ANALYSIS

### A.  Compassionate Release

United States Code Title 18, Section 3582(c)(1)(A), as amended by the First Step Act and in pertinent part, provides that the court may not modify a term of imprisonment once it has been imposed except that:

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved

---

[1] *See* https://www.bop.gov/coronavirus/ (last visited Jan. 26, 2021).  There are seven positive staff members.  *Id.*

> portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent they are applicable, if it finds that –
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . .

In addition to satisfying the above, the reduction must be "consistent with applicable policy statement issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1). The Sentencing Commission's policy statement on compassionate release is set forth in U.S. Sentencing Guidelines § 1B1.13. The Policy provides, in pertinent part, that under § 3582(c)(1)(A), the court may reduce a term of imprisonment "if, after considering the factors set forth in 18 U.S.C. § 3553(a)," the court determines that:

> (1)(A) Extraordinary and compelling reasons warrant the reduction;
> . . .
>
> (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3) The reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13. In the application notes, the Policy recognizes extraordinary and compelling reasons with regard to medical conditions (terminal illnesses or serious conditions that diminish self-care abilities), age with deterioration and significant time served, family circumstances, and other extraordinary and compelling reasons other than, or in combination with, the above reasons. U.S.S.G. § 1B1.13 n.1.

A defendant seeking relief under § 3582(c)(1)(A) has "the burden of establishing that compassionate release is warranted." *United States v. Heromin*, No. 8:11-CR-550-T-33SPF, 2019 WL 2411311, at *2 (M.D. Fla. June 7, 2019). Compassionate release is "an extraordinary and rare event." *White v. United States*, 378 F. Supp. 3d 784, 787 (W.D. Mo. 2019).

Rehabilitation, standing alone, "shall not be considered an extraordinary and compelling reason" for a sentence modification. 28 U.S.C. § 994(t); U.S.S.G. § 1B1.13 n.3.

**B. Exhaustion**

As noted above, while the First Step Act changed § 3582(c)(1)(A) to allow a prisoner to bring a motion on his or her own behalf, the statute still includes an exhaustion requirement. Specifically, a petitioner must satisfy one of two conditions: (i) "exhaust[] all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf," or (ii) thirty days must have elapsed "from the receipt of such request by the warden of the defendant's facility." 18 U.S.C. § 3582(c)(1)(A). This court has previously acknowledged that the exhaustion requirement is not satisfied where the defendant's warden denies the defendant's request for compassionate release within thirty days of the request and the defendant does not pursue any further appeal within the BOP. *See United States v. Thomas*, No. 5:13-cr-19, 2020 WL 3895781, at *2 (W.D. Va. July 10, 2020) ("If the warden denies the request within 30 days, the petitioner must then exhaust all administrative appeals available through the BOP. The second condition can only be met after the lapse of 30 days from when the warden received the petitioner's request and has not responded.").

Ware made a written request to the warden at FCI-Terminal Island on June 18, 2020, requesting compassionate release due to the COVID-19 pandemic and the need to care for his elderly parents. The warden denied Ware's request on July 13, 2020, and it is not clear if Ware pursued an appeal within the BOP. Nonetheless, the court has previously found that § 3582's exhaustion requirement is not a jurisdictional bar; instead, it is a claims-processing rule that may be waived. *United States v. Crawford*, No. 2:03-cr-10084, 2020 WL 2537507, at *1 n.1 (W.D. Va. May 19, 2020) (citing *United States v. May*, 855 F.3d 271, 275–76 (4th Cir. 2017)). In its

4

response, the government concedes that Ware has exhausted his administrative remedies within the BOP.  Accordingly, the court finds that Ware has met the exhaustion requirement.

**C.  Extraordinary and Compelling Reasons**

Ware bases his motion for release on his risk of re-contracting COVID-19 while in custody.  "In the context of the COVID-19 outbreak, courts have found extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility."  *United States v. Harper*, No. 7:18-cr-00025, 2020 WL 2046381, at *3 (W.D. Va. Apr. 28, 2020).

Ware focuses primarily on his weight as a risk factor that could cause him to suffer a severe case of COVID-19 were he to contract the virus again.  The government concedes that obesity is on the CDC's list of conditions that place individuals at a higher risk of severe outcomes from COVID-19, but Ware's body mass index is 29, which does not qualify as obese.  Further, while Terminal Island has had an outbreak in the past, there are no positive inmate cases now, and the BOP is taking active measures to contain the spread of the virus.[2]

Ware also argues that the poor health condition of his elderly parents necessitates his presence at home for their care.  The Application Notes mention family circumstances, but these circumstances are limited to the death or incapacitation of the caregiver of a minor child, or the incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver.  U.S.S.G. § 1B1.13 n.1(C).  Ware does not assert any of the listed circumstances.

---

[2] *See* https://www.bop.gov/coronavirus/covid19_status.jsp (Updated Nov. 25, 2020).

For these reasons, the court finds that Ware has not established any extraordinary or compelling reasons to order his release.

**D.  Section 3553(a) Factors**

Even if Ware had established extraordinary and compelling reasons, the court would nonetheless exercise its discretion to deny his motion.  The court acknowledges that Ware has engaged in programming while in BOP custody, has a low security classification, and is classified as a low risk to recidivate.  However, the court must also consider the nature and circumstances of the offense, the history and characteristics of the defendant, the need for the sentence imposed, and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.  *See* 18 U.S.C. § 3553(a).  Ware's underlying offense in this case was extremely serious as it led to a heroin overdose death.  Releasing Ware almost seven years before his projected 2027 release date would undermine the seriousness of the offense and would not afford adequate deterrence.  Ultimately, the court finds that Ware's sentence is necessary to reflect the seriousness of his offense, afford adequate deterrence, promote respect for the law, and provide just punishment.

### III.  CONCLUSION

For the reasons stated above, it is hereby ORDERED that Ware's motion for compassionate release (Dkt. Nos. 56, 61) is DENIED.  The clerk is directed to provide a copy of this order to the defendant, all counsel of record, and the United States Probation Office.

Entered: January 26, 2021.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge

6