CLERKS OFFICE US DISTRICT COURT
AT HARRISONBURG, VA
FILED

06/29/2026

LAURA A. AUSTIN, CLERK
BY: **/s/ Amy Fansler**
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Criminal No. 5:15-CR-00021 |
| v. | ) | |
| | ) | By:  Elizabeth K. Dillon |
| LESLIE ANDREW WARE | ) | Chief United States District Judge |

**MEMORANDUM OPINION AND ORDER**

Defendant Leslie Ware, proceeding pro se, filed a motion asking for compassionate release in April 2026 so that he may care for his mother, whose husband died in December 2025. (Dkt. No. 67.)  His motion includes an affidavit from his mother (Dkt. No. 67-1) and a character letter from an individual who has been his case manager since his placement by the Bureau of Prisons (BOP) in a home confinement program in October 2024. (Dkt. No. 67-2).  The court appointed counsel to represent Ware, and his counsel filed a supplement, which the court will deem timely filed.  (Dkt. No. 69.)   The United States opposes his motion.  (Resp. in Opp'n to Mot. for Compassionate Release, Dkt. No. 70.)  Because Ware has not shown extraordinary and compelling circumstances, he is ineligible for relief, and his motion will be denied.

I.   BACKGROUND

Ware was convicted of a single count of distributing heroin, and he was sentenced to 156 months in the custody of the Bureau of Prisons (BOP), to be followed by a three-year supervised release term.  (Jmt., Dkt. No. 48.)  He filed a prior motion for compassionate release in September 2020, which the court denied.  (Dkt. Nos. 56, 66.)

According to a letter from the woman supervising his home confinement ("Case Manager"), Ware was released to home confinement on October 24, 2024.  (Dkt. No. 67-2, at 1.)

He will be released from home confinement on August 4, 2026, to begin serving his term of supervised release.  Thus, he has about one month to serve on home confinement.

Ware argues that his mother experiences shortness of breath and that she cannot drive at night because of her poor vision.  Ware currently lives with her and can care for her full-time. He also has provided an affidavit from his mother stating that her husband passed away in December, that she "require[s] assistance with daily living tasks," and that Ware is her "only available caregiver." (Dkt. No. 67-1.)  Ware's supplement provides additional factual context, explaining that the terms of his home confinement do not allow him to leave home unless he gives several days' notice, which makes it difficult to care for any urgent or unexpected needs of his mother.  (Suppl. 2, Dkt. No. 69.)

As for his rehabilitation, his Case Manager speaks very highly of Ware's commitment to personal growth and to reintegrating into society.  She "wholeheartedly vouch[es] for the positive changes he has made in his life," and she gives a lot of detail to support her opinion. She asks the court to reduce his sentence and allow Ware to begin his supervised release term immediately.[1]

The United States offers two primary arguments in opposition.  It first argues that relief should be denied because Ware is not currently serving a term of imprisonment.  (Opp'n at 1 n.1.)  Instead, Ware is on home confinement.  The United States also contends that the circumstances described by Ware are not extraordinary and compelling, which requires that the court deny relief.  *United States v. Hargrove*, 30 F.4th 189, 196 (4th Cir. 2022).

---

[1]  Neither party addresses whether the conditions Ware finds so onerous could be modified by his Case Manager or by any other BOP personnel supervising his home confinement program.  For example, it is at least theoretically possible that Ware could be granted an exception to the advance notice requirement solely to take his mother to receive any medical care.

## II.  DISCUSSION

### A.  Compassionate Release Under the First Step Act

Commonly termed the "compassionate release" provision, 18 U.S.C. § 3582(c)(1)(A)(i)

provides a statutory vehicle to modify a defendant's sentence under certain circumstances.  As

amended by the First Step Act and in pertinent part,[2] the statute

> authorizes a court, in its discretion, to reduce a term of imprisonment after it has (1) considered the [18 U.S.C.] § 3553(a) factors for imposing a sentence, (2) found that "extraordinary and compelling reasons warrant such a reduction," and (3) found that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."

*United States v. Crawley*, 140 F.4th 165, 169 (4th Cir. 2025) (quoting 18 U.S.C.

§ 3582(c)(1)(A)); *United States v. Centeno-Morales*, 90 F.4th 274, 279 (4th Cir. 2024).  In 2023,

the Commission issued an amended policy statement setting forth a non-exhaustive list of

circumstances that may individually or in combination constitute "extraordinary and compelling"

reasons for a sentence reduction.  *See* U.S.S.G. § 1B1.13.  The Supreme Court has recently

emphasized that such reasons must be "especially unusual and convincing."  *Rutherford v.

United States*, No. 24–820, 2026 WL 1485535, at *7 (U.S. May 28, 2026) (holding that a non-

retroactive change to 18 U.S.C. § 924(c) cannot make a prisoner eligible for compassionate

release and deeming "invalid" any portion of the Commission's policy statement that "counsels

otherwise").

The defendant bears the burden of showing that extraordinary and compelling reasons

exist.  *See Hargrove,* 30 F.4th at 195 (noting that the inmate provided information "to carry his

burden of demonstrating that his medical conditions served as an extraordinary and compelling

---

[2]  Prior to the First Step Act of 2018, only the BOP could seek relief in court under the statute.  The First Step Act changed the statute to allow a federal inmate to file a motion for compassionate release directly with the court after exhausting his administrative remedies.

reason for release"). If a defendant satisfies that showing, he is rendered eligible for release. *Rutherford*, 2026 WL 1485535, at *9. And if a movant for compassionate release can establish eligibility, then he also "bears the burden of showing why the § 3553(a) factors justify a modified sentence." *Centeno-Morales*, 90 F.4th at 279.

## B.  Exhaustion

Section 3582(c) requires administrative exhaustion before a defendant may file a motion requesting relief under it, although that requirement is a "'non-jurisdictional claim-processing rule' that can be waived or forfeited if not timely raised." *United States v. Davis*, 99 F.4th 647, 653 n.2 (4th Cir. 2024) (quoting *United States v. Muhammad*, 16 F.4th 126, 130 (4th Cir. 2021)). Defendant's counsel explains that it has been difficult to determine how to exhaust because normally such requests go to the warden at the defendant's facility, but Ware is not housed at a BOP facility. In any event, the United States has not raised a failure to exhaust as a defense; thus, the court will not dismiss because of any failure to exhaust.

## C.  Mootness

As for whether Ware can seek relief under the compassionate release statute while on home confinement, both parties recognize that Ware's motion is unusual in that he is not housed in a Bureau of Prisons facility but is confined to his own home. (*See* Opp'n at 1 n.1; Suppl. Mot. 1 (describing Ware's motion "an unusual posture for a compassionate release case").) From this, the United States maintains that Ware does not fall within the terms of § 3582(c)(1), which allows a district court to "modify" or "reduce a term of imprisonment," because he is not currently imprisoned. And the Fourth Circuit recently held, in a published decision, that claims for compassionate release are mooted once a defendant is released from custody. *United States v. Davis*, 177 F. 4th 549, 551 (4th Cir. 2026). But *Davis* did not involve a defendant serving a

sentence of home confinement, and the Fourth Circuit also has stated—at least in unpublished decisions—that a motion for compassionate release is not mooted by a defendant's release to home confinement.  *E.g.*, *United States v. Smith*, No. 23-6472, 2024 WL 1596672, at *2 (4th Cir. Apr. 12, 2024) (unpublished) (citing *United States v. Saunders*, 986 F.3d 1076, 1078 (7th Cir. 2021)); *United States v. Hibbert*, No. 23-6270, 2023 WL 8946817, at *1 (4th Cir. Dec. 28, 2023) (unpublished).  In *Smith*, as here, the defendant had been transferred to home confinement.  As that court explained, Smith was still in the custody of the BOP, and thus the district court had discretion to reduce his sentence to time served.  *Smith*, 2024 WL 1596672, at *2.  Because the court had the authority to grant him effectual relief, his claim was not moot.  *Id.*; *see also Hibbert*, 2023 WL 8946817, at *1 (same).  The same is true here.  If the court reduced Ware's sentence to time served, he would no longer be on home confinement under the conditions he challenges.  Accordingly, the court will not deny the motion as moot or improper simply because Ware is not currently housed at a BOP facility.

## D.  Extraordinary and Compelling Reasons

Ware's compassionate release motion points to his mother's illness and his own rehabilitation efforts as "extraordinary and compelling" reasons to reduce his sentence to time served so that he can immediately begin his supervised release term.  The court addresses each briefly.

### 1.  Mother's serious health condition

Ware explains that his mother is in her 70s and suffers from COPD, vision problems which make her unable to see at night, and shortness of breath.  (Suppl. 2.)  He insists that the conditions of his home confinement prevent him from leaving the home unless he gives several days' notice.  (*Id.*)  This condition makes it difficult to serve as her caregiver because he cannot

5

leave the home to care for any urgent or unexpected need.  (*Id.*)

Under the relevant policy statement, a defendant may be able to show extraordinary and compelling circumstances where the evidence shows that the defendant's parent is incapacitated and the defendant would be the only available caregiver for the parent.  U.S.S.G. § 1B1.13(b)(3)(C).  As the United States correctly notes, Ware's allegations do not amount to "incapacitation."

As another judge of this court recently explained, although the guidelines do not provide a definition of "incapacitation," many courts have looked for guidance to the definition of "incapacitation" as described in the Bureau of Prisons program statement or to the Uniform Probate Code.  *United States v. Mahone*, No. 5:12-CR-27, 2025 WL 495376, at *4–5 (W.D. Va. Feb. 13, 2025) (collecting authority).  Those definitions render incapacitation a "high bar."  *See id.* (citation omitted).  BOP Program Statement 5050.50, which describes the procedures the BOP uses to implement compassionate-release requests, defines "incapacitation" as "a serious injury, or a debilitating physical illness" causing the person to be "completely disabled" meaning he or she "cannot carry on any self-care and is totally confined to a bed or chair."  BOP Program Statement 5050.50, at 10.  The Uniform Probate Code defines the term even more narrowly— appropriate in that granting guardianship over another adult should be an extraordinary action— requiring that an individual be "unable to receive and evaluate information or make or communicate decisions to such an extent that the individual lacks the ability to meet essential requirements for physical health, safety, or self-care . . . ."  *Mahone*, 2025 WL 495376, at *4 (citations omitted).  Although these definitions are not binding, they do provide guidance.  And Ware has not alleged or shown that his mother's condition, which causes her some difficulty breathing and seeing at night, is even close to the level of incapacitation described in those

6

sources.

Moreover, the court finds it notable that Ware is already living with and caring for his mother. The restrictions imposed as part of his home confinement may well render some of that care inconvenient. For example, if he may not leave the home without notice, he may have to rely on others to transport his mother in the event of an emergency. But that is a typical difficulty for many caretakers, including anyone unable to drive another individual for whatever reason. It is not "especially unusual and convincing." *Cf. Rutherford*, 2026 WL 1485535, at *7.

Lastly, the court finds it significant that Ware has only about one more month on home confinement. Nothing in his motion or counsel's supplement suggests that his mother's condition is likely to rapidly deteriorate in that time. Thus, his mother's medical issues are not an extraordinary and compelling circumstance rendering Ware eligible for compassionate release.

### 2. Post-Sentencing rehabilitation

Ware also points to his rehabilitation efforts after sentencing, but Congress has specified "that rehabilitation *alone* cannot be considered an extraordinary and compelling reason for release, [although] it may be considered as one factor among several under § 3582(c)(1)(A)." *Davis*, 99 F.4th at 659 (citation omitted). His Case Manager's letter states that he has made "remarkable progress in his rehabilitation" and describes that progress in some detail. The court commends Ware for his efforts and hopes that he will continue on the path of reform and good adjustment described in that letter. Still, the rehabilitation is not the type of exemplary or unusual rehabilitation that courts have found could support a reduction in sentence under the compassionate release statute. *Cf. id.* at 660–61 (concluding that the district court erred in failing to address defendant's rehabilitation argument where defendant had a decade of mitigation

evidence, including documentary evidence supporting his coursework and good behavior, a glowing letter from his employer, and where there had been "substantial changes" in the law that, applied to defendant, would have reduced his guideline range from 188–235 months down to 92–115 months); *United States v. Vaughn*, 62 F.4th 1071, 1071 (7th Cir. 2023) ("Taking classes while incarcerated is common rather than extraordinary.").  Moreover, even if considered together with his allegations about his mother's health, the court does not find extraordinary and compelling circumstances.  Thus, his rehabilitation efforts do not render him eligible for a reduction in sentence, either.

## III.  CONCLUSION AND ORDER

For the above reasons, it is hereby ORDERED that Ware motion for a reduced sentence based on the compassionate release statute (Dkt. No. 67) is DENIED.  The clerk is directed to provide a copy of this order to all counsel of record and directly to Ware at his address of record.

Entered: June 29, 2026.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
Chief United States District Judge

8